IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
FINANCIAL PACIFIC INSURANCE    )
COMPANY,                       )
                               )   2:05-cv-2099-GEB-CMK
               Plaintiff,      )
                               )
     v.                        )   ORDER*
                               )
AMCO INSURANCE COMPANY,        )
                               )
               Defendant.      )
_____)
```

Pending are cross motions for summary judgment on all claims. The claims concern insurance coverage responsibility for an accident which occurred on a construction site.

BACKGROUND

On August 1, 2002, Scott Brister fell and injured himself while working on the Skyline Building A project for Medtronic AVE. (Def.'s Response to Pl.'s Undisputed Facts ("DRUF") ¶¶ 7, 22.) Brister testified he thought he tripped on ceiling wires and that is what caused him to fall. (Id. ¶ 23.) He also testified the bundle of

---

\* This matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

1

wires where he tripped was six to eight inches in diameter. (Id. ¶ 25.)

Stan Walker & Associates ("Walker") was the general contractor for the Skyline Building A project. Walker was insured by Defendant. (Id. ¶ 1.) Walker subcontracted J.R. Garrison & Associates ("Garrison") to install new ceilings and repair existing ceilings. (Id. ¶ 3.) Garrison brought three twelve-foot long bundles of ceiling wires to the job site. (Id.) The bundles were an inch and a quarter in diameter. (Id.) Garrison was insured by Plaintiff. (Id. ¶ 2.) Garrison named Walker as an additional insured, to the extent Walker was held liable for Garrison's acts or omissions, on Garrison's insurance policy with Plaintiff. (Pl.'s Statement of Undisputed Facts ("PSUF") ¶ 2.)

Brister filed an action against Walker alleging premises liability and general negligence. (DRUF ¶ 30.) Defendant tendered the "defense and indemnity" of Walker to Plaintiff, but Plaintiff declined the tender. (Id. ¶¶ 35, 36.) Defendant hired an attorney and filed a cross-complaint against Garrison seeking indemnification, apportionment of fault, declaratory relief, and breach of contract. (Id. ¶ 38.)

On October 27, 2003, Plaintiff sent a letter ("October 27 letter") to Defendant[1] agreeing to defend Walker "subject to a full and complete reservation of rights." (Def.'s Statement of Undisputed Facts ("DSUF") ¶ 16.) On November 14, 2003, Plaintiff sent a letter ("November 14 letter") to Defendant stating "that the Reservation of

---

[1] The letter was addressed to "Allied Insurance." Defendant AMCO Insurance is one of the "Allied Group" insurance companies and Plaintiff mistakenly referred to AMCO as "Allied Insurance." (Def.'s Opp'n at 5 n.2; DRUF ¶ 45.)

Rights letter dated 10/27/03 is hereby withdrawn[, and that Plaintiff] further agrees to defend and indemnify your insured in this action." (Id. ¶ 18.)  The letter further stated "In light of the withdrawal of the Reservation of Rights we request your cooperation . . . with a dismissal of the cross complaint so that we may proceed to defend the allegations in the original complaint." (Id.)  On December 9, 2003, the cross complaint was dismissed.  (DRUF ¶ 49.)  On May 5, 2005, Plaintiff sent Defendant a letter stating Plaintiff believed Defendant's coverage was primary and Plaintiff would not seek contribution toward the defense if Defendant agreed to contribute toward a settlement. (DSUF ¶ 59.)

At trial the jury found Brister was 85% at fault, Medtronic was 10% at fault, and Walker was 5% at fault.  (DRUF ¶ 63.)  After the trial, Plaintiff negotiated a settlement with Brister for $215,000. (Id. ¶ 67.)  Defendant refused to contribute to the $215,000 settlement.  (Id. ¶ 69.)  In addition, Plaintiff incurred $198,782.27 in legal fees for the defense of the Brister action.  (Id. ¶ 70.)

DISCUSSION

I.  Defense Fees and Costs

Plaintiff argues it is entitled to summary judgment on its claim for defense fees and costs because Defendant must equitably contribute to the defense Plaintiff provided Walker.  (Pl.'s Mot. at 9.)  Plaintiff asserts that both insurance companies had a duty to defend and therefore, Defendant has a duty to contribute to the costs incurred in defending Walker.  (Id. at 10, 12.)  Plaintiff further asserts that at least after it sent Defendant a letter on May 5, 2005 demanding contribution, Defendant had a duty to contribute to the defense costs.  (Id. at 12.)  Defendant counters it is entitled to

1  summary judgment because Plaintiff "has no right to contribution for
2  defense fees and costs from [Defendant] because [Defendant's] policy
3  provided excess coverage for [Walker] and [Plaintiff's] policy
4  provided primary defense coverage, making [Plaintiff] completely
5  responsible for [Walker's] defense fees and costs." (Def.'s Opp'n at
6  10.)  Plaintiff rejoins that the "other insurance" clauses do not
7  establish Defendant's coverage was excess.  (Pl.'s Reply at 14.)
8         Plaintiff reasons that Defendant's coverage is not excess
9  under California law relying on a statement by the California Supreme
10 Court that "the modern trend is to require equitable contributions on
11 a pro rata basis from all primary insurers regardless of the type of
12 'other insurance' clause in their policies."  Dart Indus., Inc. v.
13 Commercial Union Ins. Co., 28 Cal. 4th 1059, 1080 (2002).  However,
14 the court in Dart did not decide the question of whether "other
15 insurance" clauses control in disputes between two insurers.  Id.
16 (indicating it was not reaching the issue of whether or not the rule
17 Plaintiff quotes is universally applicable).
18         Both insurance policies contain an "other insurance" clause.
19 Plaintiff's policy specifies when there are two or more primary
20 insurance policies, Plaintiff will contribute in equal shares or in
21 pro rata shares, depending on the language of the other primary
22 insurance policy.  (PSUF ¶ 2.)  Defendant's policy provides it is
23 excess over "any other primary insurance available to [insured]
24 covering liability for damages arising out of the premises or
25 operations for which you have been added as an additional insured by
26 attachment of an endorsement."  (Id.)
27         "Contractual terms of insurance coverage are honored
28 whenever possible.  The courts will therefore generally honor the

4

language of excess 'other insurance' clauses when no prejudice to the interests of the insured will ensue." Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1304 (1998). Defendant's policy in this case contains a "narrow exception[] to [its] operation as primary insurance." Hartford Cas. Ins. Co. v. Travelers Indem. Co., 110 Cal. App. 4th 710, 726 (2003). Defendant's policy declares coverage is excess only "in the situation where the parties and the insurers are most likely to intend that result-when the insured is covered as an additional insured on another party's policy for some specific event or situation." Id.

> Equity should not be employed to override the terms of the insurance policies in this case . . . [Defendant's] policy is primary except in the specific instance that does apply in this case-when the insured is named as an additional insured under another policy, which makes the [Defendant's] policy excess by definition. Because the policy terms, as they apply in this case, do not conflict or offend public policy and do not infringe on any rights of the insured, there is no reason to disregard the express terms of both policies.

Id. at 727.

Since the "other insurance" clauses in the insurance policies do not conflict, both will be given effect. By its terms, Defendant's insurance coverage was excess to Plaintiff's coverage in the limited situation where Walker was covered as an additional insured under Plaintiff's policy. Whether Walker was covered as an additional insured under Plaintiff's policy turns on whether Walker was held liable for the acts or omissions of Garrison. (PSUF ¶ 2.)

Whether the 5% fault apportioned to Walker by the jury in the Brister action is attributable to the acts or omissions of Garrison raises disputed factual issues. Brister testified he fell

1  when he tripped over ceiling wires on the job site.  (DRUF ¶ 23.)
2  Mechanical and electrical subcontractors, as well as Walker, Medtronic
3  and Garrison used ceiling wires at the job site.  (Id. ¶ 17.)  Since
4  there are disputed factual issues regarding whether Garrison was at
5  fault for Brister's fall, summary judgment is denied on the claim of
6  contribution for defense fees and costs.

II.  Settlement

Plaintiff further seeks summary judgment on its claim for the settlement amount because it is entitled to recover the entire amount of settlement from Defendant based on the principle of equitable indemnity.  (Pl.'s Mot. at 18.)  Defendant rejoins summary judgment should be granted denying settlement costs because it has established the affirmative defenses of waiver and estoppel and therefore, has no duty to contribute.  (Def.'s Opp'n at 10.)

A.  Waiver

Plaintiff argues Defendant cannot establish the defense of waiver because there is no evidence Plaintiff intended to relinquish a known right.  (Pl.'s Mot. at 23.)  Defendant rejoins that waiver can also be established by conduct and that Plaintiff's conduct amounted to waiver of the right to contribution.  (Def.'s Opp'n at 12.)

"[W]aiver is the intentional relinquishment of a known right after knowledge of the facts."  Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 31 (1995).  "The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right."  Id.

Defendant argues that Plaintiff's withdrawal of its reservation of rights in the November 14 letter constituted an implied waiver of the right to contribution.  (Def.'s Opp'n at 12.)  Plaintiff

6

1  rejoins that "[n]either the reservation of rights letter from
2  [Plaintiff], nor the letter withdrawing the reservation of rights,
3  refer to contribution or the rights of the insurers against each
4  other[; therefore, Plaintiff] waived the right to deny coverage to
5  *Walker*, but nothing else."  (Pl.'s Mot. at 23.)

6  Plaintiff's October 27 letter states "No payment by
7  [Plaintiff] of settlements and/or judgments and defense costs shall
8  constitute a waiver of [Plaintiff's] right to seek later allocation
9  and reimbursement of such settlements and/or judgments and defense
10 costs on the grounds that there is no duty to defend or indemnify all
11 or a portion of the instant action."  (DSUF ¶ 16.)  Plaintiff's
12 November 14 letter states that the October 27 letter is withdrawn and
13 that Plaintiff "further agrees to defend and indemnify your insured in
14 this action."  (Id. ¶ 18.)

15 Neither letter references equitable contribution or
16 indemnity between the insurance companies.  Therefore, conflicting
17 "ultimate inferences" can be drawn from the letters that prevent
18 granting summary judgment.  Miller v. Glenn Miller Prods., Inc., 454
19 F.3d 975, 988 (9th Cir. 2006) ("where divergent ultimate inferences
20 may reasonably be drawn from the undisputed facts, summary judgment is
21 improper.").  Therefore, summary judgment is denied on Defendant's
22 affirmative defense of waiver.

23 B.  Estoppel

24 Defendant asserts Plaintiff is estopped from pursuing
25 contribution because Plaintiff induced Defendant to rely on the
26 November 14 letter and Defendant relied on that letter to its
27 detriment.  (Def.'s Opp'n at 16.)  Plaintiff contends it "did not have
28 all the facts when it retracted its reservation of rights" and that a

7

1  "reservation of rights, or lack thereof, does not affect contribution
2  rights, and there was no basis for either party to assume otherwise."
3  (Pl.'s Mot. at 24.)
4      "The elements of [estoppel] are that (1) the party to be
5  estopped must be apprised of the facts; (2) he must intend that his
6  conduct shall be acted upon, or must so act that the party asserting
7  the estoppel has a right to believe it was so intended; (3) the other
8  party must be ignorant of the true state of facts; and (4) he must
9  rely upon the conduct to his injury." Strong v. County of Santa Cruz,
10 15 Cal. 3d 720, 725 (1975). "Whether equitable estoppel applies is
11 normally a question of fact." Sofranek v. Merced County, 146 Cal.
12 App. 4th 1238, 1251 (2007). "The doctrine of equitable estoppel is
13 founded on concepts of equity and fair dealing. It provides that a
14 person may not deny the existence of a state of facts if he
15 intentionally led another to believe a particular circumstance to be
16 true and to rely upon such belief to his detriment." Oakland Raiders
17 v. Oakland-Alameda County Coliseum, Inc., 144 Cal. App. 4th 1175, 1189
18 (2006). "This form of estoppel is, for practical purposes,
19 indistinguishable from the doctrine of implied waiver through
20 conduct." Id. at 1190.
21      Since the question of whether Plaintiff's conduct amounted
22 to an implied waiver of its right to contribution depends on
23 resolution of factual disputes, Defendant's summary judgment motion on
24 its affirmative defense of estoppel is denied.
25      C.  Equitable Indemnity
26      Plaintiff contends Defendant should be required to pay the
27 entire settlement amount because the jury did not apportion any fault
28 to Garrison and therefore, only Defendant's insurance policy covered

1  Walker. (Pl.'s Mot. at 18-19.) Defendant counters this is only
2  because Plaintiff "was allowed to shape the defense" during the
3  Brister action. (Def.'s Opp'n at 18.)
4    Whether Walker was held liable based on the acts or
5  omissions of Garrison requires the resolution of disputed factual
6  issues. Therefore, summary judgment on Plaintiff's claim of equitable
7  indemnity is denied.

## CONCLUSION

  Summary judgment is denied on Plaintiff's claims for equitable contribution for the defense fees and costs and equitable indemnity for the settlement amount. Summary judgment is also denied on Defendant's affirmative defenses of waiver and estoppel.

  IT IS SO ORDERED.

Dated: March 5, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge